# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

ANNA P.,[1]
      Plaintiff,

Case No. 2:23-cv-608

Litkovitz, M.J.

vs.

COMMISSIONER OF
SOCIAL SECURITY,
      Defendant.

**ORDER**

      Plaintiff Anna P. brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application for supplemental security income (SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 13), the Commissioner's response in opposition (Doc. 18), and plaintiff's reply (Doc. 19).

## I. Procedural Background

      Plaintiff protectively filed her application for SSI on July 30, 2020 alleging disability beginning April 1, 2013[2], due to Bipolar disorder, obsessive-compulsive disorder (OCD), anxiety, post-traumatic stress disorder (PTSD), borderline personality disorder, spasms in her lower back, issues with her left leg, right arm, and left elbow, and diabetes. (Tr. 157-63, 175).[3]

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

[2] Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that [plaintiff] files an SSI application. Thus, the relevant period of consideration in this case begins on July 30, 2020. *See* 20 C.F.R. § 416.335; *Koster v. Comm'r of Soc. Sec.*, 643 Fed. Appx. 466, 478 (6th Cir. 2016) ("For purposes of SSI, which is not retroactive, the relevant period here is . . . the date [plaintiff] filed his protective application.").

[3] Plaintiff previously filed for SSI on October 28, 2015. ALJ Stuart Adkins issued an unfavorable decision on May 16, 2018. (Tr. 97-113).

The application was denied initially and upon reconsideration.  Plaintiff, through counsel,

requested and was granted a *de novo* hearing before administrative law judge (ALJ) Laura Chess

on September 15, 2021.  (Tr. 34-74).  Plaintiff and a vocational expert (VE) appeared

telephonically and testified at the ALJ hearing.  (*Id.*).  On March 30, 2022, the ALJ issued a

decision denying plaintiff's application.  (Tr. 10-33).  This decision became the final decision of

the Commissioner when the Appeals Council denied review on December 13, 2022.  (Tr. 1-6).

## II.  Analysis

### A.  Legal Framework for Disability Determinations

To qualify for SSI, a claimant must suffer from a medically determinable physical or

mental impairment that can be expected to result in death or that has lasted or can be expected to

last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c(a)(3)(A).  The

impairment must render the claimant unable to engage in the work previously performed or in

any other substantial gainful employment that exists in the national economy.  42 U.S.C. §

1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation

process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.  If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 416.920(a)(4)(i)-(v), 416.920 (b)-(g)).  The claimant has the burden of proof at the first four steps of the sequential evaluation process.  *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir. 2004).  Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy.  *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

**B.  The Administrative Law Judge's Findings**

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. [Plaintiff] has not engaged in substantial gainful activity since July 30, 2020, the application date (20 CFR 416.971 *et seq.*).

2. [Plaintiff] has the following severe impairments: diabetes, arthritis, gastroesophageal reflux disease (GERD), obesity, obsessive-compulsive disorder, anxiety, post-traumatic stress disorder (PTSD), depression, borderline personality disorder, and bipolar disorder (20 CFR 416.920(c)).

3. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, [the ALJ] find[s] that [plaintiff] has the residual functional capacity to perform work[4] as defined in 20 CFR 416.967 except [plaintiff] is limited to: standing for 1 hour at a time up to a total of 5 hours in an 8-hour workday; walking for 1 hour at a time up to a total of 4 hours in an 8-hour workday; and sitting for 3 hours at a time up to a total of at least 6 hours in an 8-hour workday. When alternating positions, [plaintiff] would be able to remain on task at her work station.  [Plaintiff] can frequently operate foot controls with both lower extremities.  [Plaintiff] can frequently push, pull, handle, finger, and feel with both upper extremities.  [Plaintiff] is further limited to: frequent balancing as defined by the Selected Characteristics of Occupations (SCO); occasional stooping, kneeling, crouching, crawling, and climbing of ramps or stairs; and never climbing ladders, ropes, or scaffolds. [Plaintiff] can have occasional exposure to extreme heat, extreme cold, and vibrations, but should not work at unprotected heights or in the vicinity of uncovered unguarded moving machinery.  [Plaintiff] can understand, remember, and carry out simple instructions.  She can make simple work-related decisions. [Plaintiff] should not perform work at a production rate pace, such as work on an assembly line.  [Plaintiff] can have occasional interaction with supervisors, coworkers, and the public.  There can be occasional changes in a routine work setting.

5. [Plaintiff] is unable to perform any past relevant work (20 CFR 416.965).[5]

6. [Plaintiff] was born [in] … 1967 and was 52 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed (20 CFR 416.963).

7. [Plaintiff] has a marginal education (20 CFR 416.964).

8. Transferability of job skills is not an issue in this case because [plaintiff]'s past relevant work is unskilled (20 CFR 416.968).

9. Considering [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform (20 CFR 416.969 and 416.969a).[6]

---

[4] While the ALJ did not specify the type of physical exertion category in this finding, it is clear from the body of the ALJ's decision that she limited plaintiff to "light" work with additional limitations.  (Tr. 24, 27).  "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. § 416.967.  "Light" work also "requires a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls."  *Id.*
[5] Plaintiff's past relevant work was as a commercial cleaner, which is heavy as generally performed and medium as actually performed, unskilled work.  (Tr. 25, 64).
[6] Relying on the VE's testimony, the ALJ found that plaintiff would be able to perform the requirements of

10. [Plaintiff] has not been under a disability, as defined in the Social Security
Act, since July 30, 2020, the date the application was filed (20 CFR 416.920(g)).

(Tr. 16-29) (footnotes added).

## C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. §

405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by

substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v.*

*Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.,*

478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill,*

587 U.S. ___, 139 S. Ct. 1148, 1154 (2019) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305

U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but

less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir.

2007). In deciding whether the Commissioner's findings are supported by substantial evidence,

the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the

disability determination. Even if substantial evidence supports the ALJ's conclusion that the

plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails

---

representative light, unskilled occupations such as routing clerk (105,000 jobs in the national economy), mail sorter
(13,000 jobs in the national economy), or merchandise marker (227,000 jobs in the national economy). (Tr. 27-28, 65-
66).

to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746).

### D. Specific Errors

On appeal, plaintiff contends that the ALJ erred in determining her residual functional capacity (RFC). Plaintiff argues that the physical portion of the RFC finding is unsupported by substantial evidence because the ALJ erred in evaluating the opinion of consultative examiner Babatunde Onamusi, M.D., which resulted in an unsupported step five finding. (Doc. 13 at PAGEID 925-30). Plaintiff also argues that ALJ Chess improperly assessed her mental RFC because ALJ Chess erroneously considered ALJ Adkins' prior RFC as a mandatory starting point and that the current RFC finding is unsupported. (*Id.* at PAGEID 930-38).

The Commissioner counters that the ALJ reasonably evaluated the medical evidence and clearly explained why she found Dr. Onamusi's opinion persuasive. (Doc. 18 at PAGEID 952-54). As to plaintiff's mental impairments, the Commissioner argues that the ALJ's RFC is supported by substantial evidence because she provided the required fresh look at the new evidence and reasonably concluded that the new evidence did not warrant additional limitations. (*Id.* at PAGEID 955-57).

#### 1. The ALJ's RFC determination as to plaintiff's physical impairments is supported by substantial evidence.

Plaintiff alleges that the ALJ's RFC as to plaintiff's physical impairments is not supported by substantial evidence. Specifically, plaintiff contends that the ALJ found the opinion of Dr. Onamusi generally persuasive and essentially adopted the entirety of the opinion but "the ALJ's rejection of the lifting and carrying limitations was improper." (Doc. 13 at PAGEID 928). According to plaintiff, the ALJ substituted her own lay opinion of Dr. Onamusi's

6

examination findings to conclude that the potentially debilitating lifting and carrying limitations were unsupported. Plaintiff contends that this error harmed her given that plaintiff would have been found disabled under the Medical-Vocational (Grid) Rules if limited to sedentary work. *See* 20 C.F.R. 404, Subpart P, Appendix 2, Rule 201.19. (Doc. 13 at PAGEID 925-30).

For claims filed on or after March 27, 2017, new regulations apply for evaluating medical opinions. *See* 20 C.F.R. § 416.920c (2017); *see also* 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15132-01, 2017 WL 1105368 (Mar. 27, 2017)). These new regulations eliminate the "treating physician rule" and deference to treating source opinions, including the "good reasons" requirement for the weight afforded to such opinions.[7] *Id.* The Commissioner will "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)[8], including those from your medical sources." 20 C.F.R. § 416.920c(a). Rather, the Commissioner will consider "how persuasive" the medical opinion is. 20 C.F.R. § 416.920c(b).[9] In determining the persuasiveness of a medical opinion, the ALJ considers five factors:

---

[7] For claims filed prior to March 27, 2017, a treating source's medical opinion on the issue of the nature and severity of an impairment is given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(c)(2). *See also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). "The Commissioner is required to provide 'good reasons' for discounting the weight given to a treating-source opinion." *Id.* (citing 20 C.F.R. § 416.927(c)(2)).

[8] A "prior administrative medical finding" is defined as "[a] finding, other than the ultimate determination about whether the individual is disabled, about a medical issue made by an MC [medical consultant] or PC [psychological consultant] at a prior administrative level in the current claim." 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5850. For clarity, the Court will refer to the limitations opined by the state agency reviewing physicians and psychologists as "assessments" or "opinions."

[9] "The Commissioner's regulations governing the evaluation of disability for DIB and SSI are identical." *Miller v. Comm'r of Soc. Sec.*, No. 3:18-cv-281, 2019 WL 4253867, at *1 n. 1 (S.D. Ohio Sept. 9, 2019) (quoting *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). For claims filed on or after March 27, 2017, these regulations are found at 20 C.F.R. §§ 404.1520c and 416.920c, respectively. The Court's references to DIB regulations should be read to incorporate the corresponding and identical SSI regulations, and vice versa, for purposes of this Order.

(1) supportability, (2) consistency, (3) relationship with the claimant, including length of treatment relationship, frequency of examinations, purpose of the treatment relationship, and examining relationship, (4) specialization, and (5) other factors that tend to support or contradict a medical opinion.  20 C.F.R. § 416.920c(c)(1)-(5).  The most important factors the ALJ must consider are supportability and consistency.  20 C.F.R. § 416.920c(b)(2).  With respect to the supportability factor, "[t]he more relevant the objective medical evidence[10] and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be."  20 C.F.R. § 416.920c(c)(1).  Similarly, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s). . . ."  20 C.F.R. § 416.920c(c)(2).  The ALJ is required to "explain how [he] considered the supportability and consistency factors for a medical source's medical opinions" in the written decision.  20 C.F.R. § 416.920c(b)(2).  Conversely, the ALJ "may, but [is] not required to, explain" how he/she considered the relationship, specialization, and other factors set forth in paragraphs (c)(3) through (c)(5) of the regulation.  *Id.*  However, where two or more medical opinions or prior administrative findings about the same issue are equally persuasive, the ALJ must articulate how he or she "considered the other most persuasive factors in paragraphs (c)(3) through (c)(5). . . ."  20 C.F.R. § 416.920c(b)(3).  Finally, the ALJ is not required to articulate how he or she considered evidence from nonmedical sources.  20 C.F.R. § 416.920c(d).

---

[10] Objective medical evidence is defined as "signs, laboratory findings, or both."  82 Fed. Reg. 5844-01, 2017 WL 168819, at *5850.

Babatunde Onamusi, M.D., examined plaintiff for disability purposes on December 16, 2021.  (Tr. 831-45).  Plaintiff reported a history of lower back, left knee, and left ankle pain "but has really not seen any doctor or had any treatment for the joints or back complaints."  (Tr. 842).  She described her pain as chronic yet tolerable, and exacerbated by bending, prolonged standing, or prolonged walking.  (*Id.*).  On examination, plaintiff exhibited normal motor strength and normal range of motion, except for minor deficits of range of motion in her surgically repaired left elbow.  Plaintiff exhibited diminished reflexes and sensation in her feet and ankles due to diabetes.  Plaintiff was noted to squat with difficulty—only 60% of the way, while holding on to the examination table.  (Tr. 837-41, 843-44).

 Dr. Onamusi assessed that plaintiff's "subjective symptom reports were consistent with physical examination findings.  Functionally, it is my opinion that [plaintiff] is able to sit, stand, or walk frequently, bend occasionally, can squat to a limited extent with support, climb steps occasionally, lift up to 30 pounds occasionally, use the upper extremities for gross and fine motor tasks frequently."  (Tr. 844).  Dr. Onamusi also completed a medical source statement in which he opined that plaintiff could lift and/or carry up to 10 pounds occasionally and 11 to 20 pounds occasionally but could never lift and/or carry 21 to 50 pounds.  (Tr. 831).  Dr. Onamusi found that plaintiff could occasionally climb ramps, stoop, kneel, crouch, and crawl, but never climb ladders, ropes, or scaffolds.  (Tr. 834).

In evaluating Dr. Onamusi's opinion, the ALJ explained her view of both the consistency and the supportability of the opinion.  (Tr. 25-26).[11]  The ALJ specifically noted that "Dr.

---

[11] These pages in the administrative transcript are out of order.  Pages 13 and 14 of the ALJ's decision are reversed.  Page 13 of the opinion (Tr. 26) should be before page 14 of the opinion (Tr. 25).

Onamusi's narrative analysis concluded [plaintiff] could lift as many as thirty pounds occasionally." (Tr. 26). In evaluating supportability, the ALJ relied on Dr. Onamusi's observations of reduced range of motion in plaintiff's surgically repaired elbow and reduced sensation in her feet. (*Id.*). The ALJ further explained that construing Dr. Onamusi's assessment "as stating [plaintiff] was incapable of frequent lifting, such an interpretation would be unsupported by [Dr. Onamusi's] observations of normal strength . . . ." (Tr. 26, Dr. Onamusi's 2021 examination records). As the ALJ specifically noted earlier in her decision, plaintiff had normal motor strength of both upper and lower extremities on clinical examination. (Tr. 23, citing Tr. 837-38). Plaintiff also exhibited only "minor deficits in flexion and supination with her left elbow"; she "denied any pain that affects activities at that time"; and she "did not exhibit tenderness over her left elbow." (Tr. 17, citing Tr. 839, 842, 844). The ALJ's supportability finding is substantially supported by Dr. Onamusi's clinical findings.

The ALJ also determined that Dr. Onamusi's limitation was inconsistent with the record as a whole. (Tr. 26, citing 2019-2020 treatment records from Community Health & Wellness Partners). The medical records on which the ALJ relied for her consistency evaluation corroborate her finding. Specifically, on June 18, 2020, just one month prior to her application date, plaintiff denied weakness or body aches but complained of painful joints. (Tr. 277). On musculoskeletal examination, plaintiff had full range of motion and no swelling or deformity. (Tr. 276). Extremity examination revealed no edema and no calf tenderness. (*Id.*). On October 15, 2020, plaintiff reported that she had "back problems," but she denied muscle aches, joint pain, and joint stiffness. (Tr. 268). Plaintiff's examinations on that date revealed full range of

motion without swelling, deformity, edema, or tenderness.  (Tr. 265).  On February 18, 2021,

plaintiff again reported that she had "back problems," but she again denied muscle aches, joint

pain, and joint stiffness.  (Tr. 635).  None of the examination records reference any concerns

about diminished strength or ability to lift or carry objects.

In addition, plaintiff contends that the ALJ substituted her own lay opinion of Dr.

Onamusi's examination findings to conclude that the potentially debilitating lifting and carrying

limitations were unsupported.  (Doc. 13 at PAGEID 926-30).  Plaintiff appears to argue the ALJ

rejected Dr. Onamusi's opinion that plaintiff can only "occasionally" lift 20 to 30 pounds and

substituted her own opinion that plaintiff can "frequently" lift 10 pounds as required for light

work activity.  (Tr. 26).  Without Dr. Onamusi opining that plaintiff can frequently lift 10

pounds, plaintiff argues, the ALJ must be substituting her own lay opinion on plaintiff's ability

to frequently lift.  (Doc. 13 at PAGEID 926-30).  Plaintiff's contention in essence invites the

Court to reweigh the evidence before the ALJ.  *See Nasser v. Comm'r of Soc. Sec.*, No. 22-1293,

2022 WL 17348838, at *2 (6th Cir. Dec. 1, 2022) (Where substantial evidence supports the

ALJ's evaluation of a medical opinion, arguments supporting a contrary opinion "are a veiled

attempt to have [the Court] reweigh the evidence.").  As explained above, the ALJ considered the

relevant medical evidence in the record and reasonably concluded that plaintiff could performed

a reduced range of light work.

Furthermore, as has been reiterated recently:

An ALJ is not required to base his RFC determination on a medical opinion.
*Mokbel-Aljani v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401 (6th Cir. 2018) ("We
have previously rejected the argument that a [RFC] determination cannot be
supported by substantial evidence unless a physician offers an opinion consistent

with that of the ALJ.").  *See also Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719,
728 (6th Cir. 2013) (explaining that requiring an ALJ to base an RFC determination
on medical opinions would transfer the statutory responsibility to determine if an
individual is under a disability from an ALJ to a medical source).  Nor does an ALJ
err by relying on medical opinions from physicians who have reviewed an
incomplete record if the ALJ considers later evidence and adequately accounts for
changes in a [plaintiff's] conditions.  *McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x
26, 32 (6th Cir. 2009) (finding no error where an ALJ relied on opinions from state
agency reviewers where the ALJ considered later evidence and accounted for
relevant changes in the plaintiff's condition).

*Timothy R. J. v. Comm'r of Soc. Sec.*, No. 3:22-cv-216, 2023 WL 2258524, at *3 (S.D. Ohio Feb.

28, 2023).  Thus, the ALJ need not base her RFC finding on a specific medical opinion.

Finally, plaintiff claims that the ALJ "rejected" Dr. Onamusi's "assessment relating to

exposure to noise, exposure to cold, heat, vibration, humidity, wetness, or pulmonary irritants."

(Doc. 13 at PAGEID 928).  However, plaintiff failed to develop the argument in her initial brief

and seems to abandon the argument in her reply brief.  (*See* Doc. 19).  In addition, the

Commissioner correctly noted that the ALJ's RFC finding limits plaintiff to only occasional

exposure to extreme heat, extreme cold, and vibrations.  (Doc. 18 at PAGEID 953, citing Tr. 20).

Plaintiff failed to identify anything in the medical record indicating that she would be unable to

tolerate the remaining environmental conditions of noise, humidity, wetness, or pulmonary

irritants.  A disability claimant bears the burden to furnish medical or other evidence about her

impairments and the effects of those impairments on her ability to work.  20 C.F.R. § 416.912;

*Yvetta H. v. Comm'r of Soc. Sec.*, No. 2:21-cv-2904, 2022 WL 2352453, at *6 (S.D. Ohio June

30, 2022).  Therefore, the ALJ's RFC determination as to plaintiff's physical impairments is

supported by substantial evidence, and plaintiff's first statement of error will be overruled.[12]

---

[12] To the extent plaintiff argues the Commissioner did not meet her burden at step five of the sequential evaluation
process, this argument is without merit.  Plaintiff contends that the ALJ posed an "incomplete hypothetical question"

### 2. The ALJ's RFC determination as to plaintiff's mental impairments is supported by substantial evidence.

If a social security claimant has filed a prior application, res judicata may apply to the administrative proceedings. *Earley v. Comm'r. of Soc. Sec.*, 893 F.3d 929, 933 (6th Cir. 2018) (citing *Drummond v. Comm'r. of Soc. Sec.*, 126 F.3d 837, 841 (6th Cir. 1997)). *See also* 42 U.S.C. § 405(h) ("The findings and decision of the Commissioner of Social Security after a hearing shall be binding on all individuals who were parties to such a hearing."). The Sixth Circuit, in *Drummond*, held that "absent changed circumstances," the findings made by an ALJ as part of a prior disability determination are binding on a subsequent ALJ in later proceedings. 126 F.3d at 842. Following the decision in *Drummond*, the Commissioner issued AR 98-4(6), 1998 WL 283902 (June 1, 1998). Acquiescence Ruling 98-4(6) explains:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding.

*Id*. at *3.

In June 2018, the Sixth Circuit clarified its decision in *Drummond* and the ways in which the decision seeks to protect principles of "consistency between proceedings and finality with respect to resolved applications." *Earley*, 893 F.3d at 931. The Sixth Circuit explained that when a claimant who has filed a prior application files "a second application for the same period of time finally rejected by the first application and offers no cognizable explanation for revisiting

---

to the VE because it relied on an unsupported RFC. As explained above, the ALJ's physical RFC finding is supported by substantial evidence. Therefore, any alleged vocational error based on this RFC is overruled.

the first decision, res judicata would bar the second application." *Earley*, 893 F.3d at 933.  But

the Court also explained that "an individual may file a second application - for a new period of

time - for all manner of reasons," and res judicata would not apply to the second application.  *Id*.

When a claimant seeks disability benefits for a distinct time period, he can "obtain independent

review" of the application so long as he "presents evidence of a change in condition or satisfies a

new regulatory threshold."  *Id*. at 932.  Principles of consistency and finality "do not prevent the

agency from giving a fresh look to a new application containing new evidence or satisfying a

new regulatory threshold that covers a new period of alleged disability," while bearing in mind

the record and findings in the prior proceedings.  *Id*. at 931.

> In this case, ALJ Chess stated:

> A prior decision was issued by an Administrative Law Judge on May 16, 2018, and
> the Appeals Council declined to review that decision (Exhibits B5A and B6A). I
> considered this case in accordance with Acquiescence Ruling 98-3(6), which
> pertains to *Dennard v. Secretary of Health and Human Services*, 907 F.2d 598 (6th
> Cir. 1990), and Acquiescence Ruling 98-4(6), which pertains to *Drummond v.
> Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997). These
> Acquiescence Rulings require the undersigned to adopt certain findings from prior
> decisions made under the same title unless there is new and material evidence
> relating to the finding or there has been a change in the law, regulations, or rulings
> affecting the finding or the method for arriving at the finding.  In this case, the
> severe impairment, listing, residual functional capacity, and other work findings
> from the prior decision do not bind the undersigned because there has been new
> and material evidence that affect those findings as detailed below.

(Tr. 14).

> ALJ Chess further discussed *Drummond* when determining plaintiff's RFC as follows:

> I have also considered the prior decision as required by *Drummond v. Comm'r of
> Soc. Security*, 126 F. 3d 837 (6th Cir. 1997), as articulated in Acquiescence Ruling
> (AR) 98-4(6). In the prior decision, the [plaintiff] was noted to have severe
> impairments of diabetes, arthritis, obsessive compulsive disorder, anxiety, post-

traumatic stress disorder, depression, borderline personality disorder, and bipolar disorder. (Exhibit B6A). These impairments have been adopted; however, in addressing new and material evidence, I have also considered severe impairments of obesity and gastroesophageal reflux disease. From a physical standpoint, the prior decision outlined restrictions to: light exertion; an option to alternate between sitting and standing; never climbing ladders, ropes, or scaffolds; restriction from unprotected heights and dangerous machinery. These restrictions have been accounted for; however, in addressing new and material evidence, particularly the December 2021 consultative examination, additional limitations have been provided. (Exhibits B6A; B9F).  In addressing [plaintiff]'s mental impairments, the prior decision identified restriction to: simple tasks not at a production rate pace; simple work related decisions; occasional interaction with supervisors, coworkers, and the public; and occasional changes in the routine work setting. (Exhibit B6A). This finding has been adopted as the new evidence does not tend to refute these assessed capabilities.

(Tr. 25).

Plaintiff argues that ALJ Chess improperly assessed her mental RFC because ALJ Chess erroneously considered the prior ALJ's RFC as a mandatory starting point and neither the ALJ nor the reviewing psychologists took the required fresh look at the new evidence.  (Doc. 13 at PAGEID 930-33).  In addition, plaintiff contends, the ALJ failed to adequately consider the evidence indicating that plaintiff's mental health declined following the deaths of her boyfriend and son within months of each other in 2017.  (*Id.* at PAGEID 933-38).

As to plaintiff's first contention, ALJ Chess clearly and immediately disavowed reliance on the prior ALJ's 2018 decision, stating, "the severe impairment, listing, residual functional capacity, and other work findings from the prior decisions do not bind the undersigned because there has been new and material evidence that affect those findings as detailed below."  (Tr. 14).  ALJ Chess then provided her own thorough review of the recent mental health records, which led her to conclude that plaintiff has a moderate limitation in understanding, remembering or

applying information (Tr. 18); a moderate limitation in interacting with others (Tr. 19); a moderate limitation in concentrating, persisting or maintaining pace (Tr. 19); and a moderate limitation in adapting or managing herself (Tr. 19-20). For example, in finding plaintiff has a moderate limitation in understanding, remembering or applying information, the ALJ noted that at the time of the prior hearing, plaintiff was noted to have a normal memory. (Tr. 18). The ALJ then went on to review plaintiff's new therapy records and compare the findings to those found in the prior decision. (Tr. 18-19). Specifically, plaintiff was generally observed to exhibit normal memory even though she had some issues which improved with medication. (Tr. 19). The notes related to her physical care also noted an intact memory. (*Id.*). In finding plaintiff has a moderate limitation in interacting with others, the ALJ noted that at the time of the prior hearing, plaintiff reported an aversion to public spaces, but she attended her child's sporting events. (Tr. 19). The ALJ reviewed recent therapy records and identified waxing and waning of symptoms between observations of appropriate or even euthymic moods and behavior and observations of depressed and anxious moods. (*Id.*). In addition, plaintiff consistently cooperated with medical providers and engaged in certain social activities. (*Id.*). In finding plaintiff has a moderate limitation in concentrating, persisting, and maintaining pace, the ALJ again reviewed prior symptoms before noting that more recent records report appropriate attention and concentration. (*Id.*). In finding that plaintiff has a moderate limitation in adapting or managing herself, the ALJ noted that, like the records available at the time of the prior decision, more recent therapy records "capture ongoing social engagement including parties and intimate relationships." (Tr. 20). In addition, plaintiff "displayed insight into her own conditions

16

and independence in her functioning and relationships." (*Id.*). The ALJ's decision reflects a "fresh look" of plaintiff's more recent records.

In addition, ALJ Chess found the opinions of the reviewing psychologists only "partially persuasive" because they deferred to the prior ALJ's decision and "did not provide substantial analysis of the medical records or other references to the current medical evidence to support" their conclusions. (Tr. 26). ALJ Chess did find the reviewing psychologists opinions "generally consistent with [plaintiff's] ongoing behavioral health management, which reflects some disturbances of mood with periods of memory and concentration disturbance." (*Id.*, citing treatment notes from TCN Behavioral Health dated 9/19/2019 through 12/15/2020). Unlike the case on which plaintiff primarily relies, *Emrick v. Comm'r of Soc. Sec.*, No. 3:19-cv-320, 2021 WL 4288364, at *4-5 (S.D. Ohio Sept. 21, 2021), the ALJ did not attribute "great weight" to or blindly rely on the opinions of doctors who failed to consider the new evidence. Rather, ALJ Chess provided her own fresh look at the new evidence concerning plaintiff's mental impairments and limited her reliance on the reviewing psychologist's opinions specifically because they failed to adequately consider the new evidence. (Tr. 26).

In her statement of errors, plaintiff originally contended that ALJ Chess's RFC is not supported by substantial evidence because she failed to adequately evaluate plaintiff's recent mental health, especially the impact of the tragic 2017 deaths of plaintiff's son and boyfriend. (Doc. 13 at PAGEID 933-38). In her reply brief, however, plaintiff's position morphed into the contention that, because the state reviewing psychologists improperly applied AR 98-4(6) in deference to the prior ALJ's finding, ALJ Chess was left with "no actual medical opinion

17

addressing mental health." (Doc. 19 at PAGEID 963). Therefore, according to plaintiff, ALJ Chess "either relied upon the State agency reviewing psychologists or interpreted the raw medical data" [and] "[b]oth require remand." (Doc. 19 at PAGEID 967).

As an initial matter, the Court notes that arguments not raised in plaintiff's statement of errors are waived. *Gill v. Comm'r of Soc. Sec.*, No. 2:19-cv-4610, 2020 WL 6440263 (S.D. Ohio Nov. 3, 2020) (Marbley, C.J.); *see also Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 624 (6th Cir. 2013) ("This court has consistently held that arguments not raised in a party's opening brief, as well as arguments adverted to in only a perfunctory manner, are waived.") (citation omitted) and *Stevens v. Comm'r of Soc. Sec.*, No. 2:14-cv-2186, 2016 WL 692546, at *7 (S.D. Ohio Feb. 22, 2016) (argument not raised in statement of errors deemed waived). In addition, plaintiff's contention that ALJ Chess had "no actual medical opinion addressing mental health" ignores the ALJ's discussion of the state agency reviewing psychologists. While the ALJ acknowledged these sources did not provide substantial analysis of the newer medical evidence, she reasonably found their opinion consistent with the record as a whole because that evidence, which the ALJ thoroughly reviewed, did not warrant any additional limitations beyond those found in the prior ALJ's mental RFC finding.

In any event, ALJ Chess's mental RFC is supported by substantial evidence. The ALJ specifically noted plaintiff's "depression grief rooted in the death of her boyfriend and son" as well as her "history of remote trauma related to kidnapping and sexual abuse." (Tr. 23, citing Tr. 336 ("Lot better since first starting with CCI. Has had depressive episodes after death of boyfriend and son. Now taking care of mom who is not doing well physically.") and Tr. 337

18

(noting kidnapping and abuse at age 14)). The ALJ also discussed plaintiff's "hyperactive behavior, rapid speech, and irritable, anxious, or depressed moods" as well as "euthymic mood on other occasions." (Tr. 23, citing Tr. 341, 371, 381, 351, and 361). The ALJ further noted plaintiff's "normal thoughts but tangential thinking processes" (*Id.*, citing Tr. 341, 351); "normal memory, concentration, and fund of knowledge" (*Id.*, citing Tr. 342, 351-52, 361-62, 371-72, 381-82, 391-92, 401-02, 411-12, and 422) balanced against plaintiff endorsing some "memory issues" (*Id.*, citing Tr. 391, 401, and 411).

While plaintiff argues that the "record further does not show improvement since she initiated treatment in August 2019" (Doc. 13 at PAGEID 934), the records to which plaintiff cites do not support plaintiff's claim. Plaintiff's progress notes from October 31, 2019 indicate that she suffers from "Bipolar I MRE hypomanic, PTSD, OCD and Borderline PD" (Tr. 346) but that her bipolar disorder, PTSD, and BPD are "established" conditions and are "stable/improving." (Tr. 353). On October 31, 2019, plaintiff self-reported that "my mental health symptoms are better because I'm working on projects that make me happy" and that she "has engaged in social activities recently including church, delivering food to others, camping, reaching out to family she has not talked to in years, and spending time with a new friend." (Tr. 318-19). On March 9, 2020, plaintiff indicated she experienced mental health symptoms including "some irritability, paranoia," sleep disturbances, crying, and continued grief. (Tr. 321) However, she was utilizing coping skills, participating in therapy, and engaging in "increased social and recreational activities by participating in church when she's not too overwhelmed," doing puzzles and playing cards with her mother, and enjoying a "positive relationship" with a

"supportive" boyfriend for seven months.  (Tr. 321-22).  A recent progress note, dated May 12, 2021, indicates that plaintiff continues to suffer from Bipolar Disorder, PTSD, OCD and Borderline Personality Disorder, but those conditions are all noted to be "stable" and/or "improving."  (Tr. 818).

In addition, plaintiff contends that the ALJ did not consider the entire mental health record.  In support of her contention, plaintiff accurately identifies instances in the record where she is noted to have fair grooming; hyperactive or restless behavior; pressured, tangential, or rapid speech; paranoid thoughts; irritable, anxious, or depressed mood; blunted, labile, or guarded affect; limited or poor insight or judgment; and abnormal recent or remote memory.  (Doc. 13 at PAGEID 934-35).  However, the ALJ did not ignore the findings cited by plaintiff, and her decision reflects due consideration of plaintiff's symptoms.  (*See, e.g.*, "The claimant's behavior records regularly capture observations of irritable, depressed, and anxious moods." (Tr. 19); noting "mildly tangential thoughts with distraction" and "poor concentration" (Tr. 19); noting "hyperactive behavior, rapid speech, and irritable, anxious, or depressed moods" (Tr. 23); noting "tangential thinking processes" and "memory issues" (Tr. 230).  The ALJ's decision also reflects numerous references to plaintiff exhibiting appropriate behavior (Tr. 19, citing Tr. 264-91, 623-636, 360, 370, 380, 390, 400, 523, 526, 529, 532, 535, 541, 544, 547, 816); normal speech (Tr. 19, citing 360, 370, 381, 391, 401, 411, 523, 526, 529, 532, 535, 538, 541, 544, 547); normal thoughts or thought content (Tr. 23, citing 341, 351; *see also* Tr. 360, 371, 381, 401, 411, 523, 526, 529, 532, 535, 538, 541, 544, 547, 817); normal thought processes (Tr. 23, citing 361, 371, 381, 391, 401, 411, 523, 526, 529, 532, 535, 538, 541, 544, 547); euthymic mood (Tr. 19

20

and 23, citing Tr. 351, 361, 401, 742-43, 745, 748, 751, 757, 760, 767, 772, and 817); good insight and judgment (Tr. 19-20, citing Tr. 330, 524, 527, 530, 533, 536, 539, 542, 545, 548, and 817); normal recent and remote memory (Tr. 18-19 and 23, citing 342, 351, 361, 371, 381, 422, 664, 817, and 843); and normal attention and concentration (Tr. 19 and 23, citing 342, 351-52, 361, 371, 381, 391, 401, 411, 422, 593-622, 664, and 817). The ALJ appropriately noted plaintiff's waxing and waning symptoms in considering plaintiff's mental health treatment and reasonably determined that no additional limitations (beyond those identified in the previous ALJ's decision) were warranted. Plaintiff's argument "does little more than ask the Court to reweigh the evidence, which is not in the Court's prerogative." *Ebony M. S. v. Comm'r of Soc. Sec.*, No. 2:23-cv-1043, 2024 WL 20738, at *2 (S.D. Ohio Jan. 2, 2024) (Watson, J.) (citing *Tracy R. v. Comm'r of Soc. Sec.*, No. 2:22-cv-3332, 2023 WL 4539858, at *6 (S.D. Ohio July 14, 2023)). Therefore, because the ALJ's RFC determination as to plaintiff's mental impairments is supported by substantial evidence, plaintiff's second statement of error will be overruled.

## III. Conclusion

Based on the foregoing, plaintiff's Statement of Errors (Doc. 13) is **OVERRULED, and** the Commissioner's non-disability finding is **AFFIRMED. IT IS THEREFORE ORDERED** that judgment be entered in favor of the Commissioner and this case is closed on the docket of the Court.

Date: 2/17/2024

Karen L. Litkovitz
Chief United States Magistrate Judge

21